**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| ACADEMIA SINICA,<br><br>            Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>            Defendant. | NO. _____<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br><br>**JURY DEMANDED** |

Plaintiff Academia Sinica ("Academia Sinica" or "Plaintiff"), by and through its attorneys, files this Complaint against Defendant Microsoft Corporation ("Microsoft" or "Defendant") and hereby alleges as follows:

## NATURE OF THE ACTION

1.     This is a civil action for patent infringement under the patent laws of the United States, 35 U.S.C. § 1 et seq.

2.     This action arises from Microsoft's unauthorized and unlicensed use of Academia Sinica's patented technology in Microsoft's products and services, including but not limited to the Visual Studio products, Visual Studio Code products, and any other Microsoft products and services that provide, incorporate, enable, or integrate Microsoft's code-completion, suggestion or selection functionality marketed or described as "IntelliSense," "IntelliCode," "whole-line completions," "code completion," "autocomplete," "predictive text," or substantially similar functionality (collectively, the "Accused Products").  The marketing, testing, importation, use, and sale of such products and services within the United States infringes the intellectual property rights of Academia Sinica.

3.    By this action Plaintiff seeks money damages, exemplary damages, and attorneys' fees arising from Defendant's patent infringement under the Patent Act, 35 U.S.C. §§ 271, 283–285.

## PARTIES

### Plaintiff Academia Sinica

4.    Plaintiff Academia Sinica is a leading research academy dedicated to spearheading national academic research, cultivating elite research and development ("R&D") talent, and advancing frontier science and technology.  It is headquartered at No. 128, Section 2, Academia Road, Nangang District, Taipei City 115201, Taiwan.

5.    Founded in 1928, Academia Sinica supports research activities in a broad array of disciplines. With over 8,000 scientists, engineers, research fellows, and professional staff, Academia Sinica currently comprises 33 research institutes and centers, spanning Mathematics and Physical Sciences, Engineering Sciences, Life Sciences, and the Humanities and Social Sciences.

6.    As a cornerstone of the global scientific network, Academia Sinica maintains deep cross-border partnerships with elite academic institutions and leading global technology corporations.  Academia Sinica has entered into cooperation agreements with 65 countries and over 650 domestic and international research organizations, including, for example, its collaboration with the United States's Cancer Moonshot initiative to research and develop precision cancer diagnoses and treatments.

7.    Academia Sinica's impact is recognized by a number of global benchmarks.  The institution is ranked 18th in the World's Most Innovative Research Institutions list published by Reuters (last updated 2019).  According to Field-Weighted Citation Impact (FWCI) metrics,

Academia Sinica achieved a score of 1.49 in 2024, indicating that its research impact exceeds the global average by 49%.  In the same year, 71.4% of its research outputs were published in Q1 (top 25%) international journals, with 12.8% of its papers ranking within the top 10% of the world's most highly cited publications.

8.      Academia Sinica's prominence as a leading research institution is further evidenced by its 291 Academicians—lifelong honorary leaders in their fields—including four Nobel Laureates, two Wolf Prize winners, and recipients of the A.M. Turing Award and the Fields Medal. Furthermore, the fellowship includes 51 members of the U.S. National Academy of Sciences (NAS) and 45 members of the U.S. National Academy of Engineering (NAE), underscoring its status as a global benchmark in the academic community.

9.      Academia Sinica, primarily through its Institute of Information Science (IIS) and the Research Center for Information Technology Innovation (CITI), has dedicated extensive resources to pioneering advanced information processing technologies, such as language and information processing, natural language understanding, human-computer interactions, and computer communication and networking. These R&D achievements represent significant scientific and economic value, evidenced by publications at top-tier conferences and a comprehensive patent portfolio.  Academia Sinica regards the protection of its intellectual property as essential to preserving the integrity of its research and ensuring that the institution and its scientists receive proper recognition and fair compensation. Its dedicated Department of Intellectual Property and Technology Transfer manages a global patent portfolio that, as of 2024, includes more than 1,700 active patents across 44 countries.  Notably, over the past decade, the institution has filed 1,207 patents and been granted 1,023 patents, with 241 of those patents granted in the U.S.  The institution has also executed 2,276 technology transfers (including licenses and

material transfer agreements). This record underscores Academia Sinica's standing as a recognized center of innovation and reflects its commitment to making its innovations available to the public through authorized channels.

10.     Academia Sinica's preferred approach to intellectual property management is collaborative, but when entities use its patented technologies without authorization, it is prepared to enforce its rights through litigation.  The safeguard of Academia Sinica's innovations is not only a defense of the institution's academic dignity but a necessary means to ensure fair competition within the industry.  Academia Sinica brings this action to vindicate its patent rights and to ensure that those who benefit from its technological contributions do so on fair and lawful terms.

### Defendant Microsoft Corporation

11.     On information and belief, Defendant Microsoft is a Washington corporation with its principal place of business at One Microsoft Way, Redmond, Washington 98052.  Microsoft is a multinational technology company that produces computer software and consumer electronics.

12.     On information and belief, Microsoft (including its subsidiaries) directly and/or indirectly develops, designs, manufactures, uses, distributes, markets, offers to sell, and/or sells the Accused Products in the United States, including in this District, and otherwise purposefully directs infringing activities to this District in connection with its software and devices.

13.     On information and belief, Microsoft is registered to conduct business in the state of Texas and may be served with process through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

**JURISDICTION AND VENUE**

14.     This is an action containing claims for patent infringement arising under the patent laws of the United States, Title 35, U.S.C. § 271.  This Court has exclusive subject matter jurisdiction over those claims pursuant to 28 U.S.C. §§ 1331, 1367, and/or 1338.

15.     This Court has personal jurisdiction over Defendant because Defendant, directly and through its subsidiaries or intermediaries, including distributors, retailers, and others, conducts its business throughout the United States, including within the State of Texas; has committed in this District the acts of patent infringement that have given rise to this action; has engaged in systematic and continuous business contacts within this District; and has established minimum contacts with this forum such that exercise of jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice.

16.     Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b) because Defendant has a regular and established place of business in this District and has committed acts of infringement within this District.

17.     Defendant has had and continues to have significant contact with the State of Texas through its U.S.-based websites, U.S.-based sales, and distribution of its Accused Products, including its Visual Studio products and services, throughout the U.S. and in this District, and has purposefully availed itself of Texas's laws.

18.     Defendant offers its products and services throughout Texas, including this District, by shipping, distributing, offering for sale, selling, and advertising its products and services through its website that is accessible within this District, and through its physical business locations within this District.

19.     Upon information and belief, Defendant has also committed acts of infringement in this District by inducing and contributing to infringement by customers and end users located in this District, including commercial entities, universities, and local governmental bodies, to use the Accused Products in a manner that practices one or more asserted claims. Upon information and belief, Defendant has done so by, *inter alia*, offering for sale and selling the Accused Products to such users in the District, and by providing documentation, user guides, updates, technical support, and other instructions and encouragement for use of the Accused Products in the ordinary course of business, including, *e.g.*, software development and related activities.

20.     Defendant operates Microsoft Windows Stores in Best Buy stores in the State of Texas, including in this District.  The Microsoft Windows Stores operated by Defendant within Best Buy stores are regular and established places of business for Defendant.  These Microsoft Windows Stores have been described by Defendant as a "comprehensive store-within-a-store . . . for consumers to see, try, compare and purchase a range of products and accessories."[1] Defendant has further described the Windows Stores as "a department-level takeover within Best Buy stores," noting that a unique feature of the Windows Stores includes "1,200 staff on hand to provide a great customer experience."[2]  Defendant maintains its distinct business identity at these locations, renting the space from Best Buy and holding out its Windows Stores as discrete retail locations.[3]  Defendant has also noted that "[f]or those without a Microsoft retail store nearby, this

---

[1] *Microsoft and Best Buy Announce the Windows Store Only at Best Buy,* MICROSOFT (June 13, 2013), https://news.microsoft.com/source/2013/06/13/microsoft-and-best-buy-announce-the-windows-store-only-at-best-buy-2/.

[2] *Talking Retail: The New Windows Store Only at Best Buy*, MICROSOFT (June 13, 2013), https://blogs.windows.com/windowsexperience/2013/06/13/talking-retail-the-new-windows-store-only-at-best-buy/.

[3] *Id.*

is a great option for hands-on tryouts of popular devices and services."[4]   Further, Defendant is responsible for and controls the day-to-day operations of such stores, including, *e.g.*, its "own pricing and merchandise."[5]   According to Microsoft, the Windows Store "can be found in 500 U.S. Best Buy locations."[6]

21.     Best Buy locations with advertised Windows Stores in this District, include, for example, 190 E Stacy Rd, Allen, Texas 75002 (Sherman Division); 5514 S Broadway Ave, Tyler, Texas 75703 (Tyler Division); and 5885 Eastex Fwy, Beaumont, Texas 77706 (Beaumont Division):



---

[4] *Windows Store Only at Best Buy Launches, with Apps that Help Students Stay Fit as They Go Back to School*, MICROSOFT (Aug. 7, 2013),
https://blogs.microsoft.com/blog/2013/08/07/windows-store-only-at-best-buy-launches-with-apps-that-help-students-stay-fit-as-they-go-back-to-school/.
[5] *Best Buy Bets Big on Store-Within-Store Concepts*, MINN. STAR TRIBUNE (July 14, 2013),
https://www.startribune.com/best-buy-bets-big-on-store-within-store-concepts/215301161.
[6] *Windows Store Only at Best Buy Launches, with Apps that Help Students Stay Fit as They Go Back to School*, MICROSOFT (Aug. 7, 2013),
https://blogs.microsoft.com/blog/2013/08/07/windows-store-only-at-best-buy-launches-with-apps-that-help-students-stay-fit-as-they-go-back-to-school/.

BEST BUY, https://stores.bestbuy.com/tx/allen/190-e-stacy-rd-1780.html (last visited Apr. 26, 2026).



BEST BUY, https://stores.bestbuy.com/tx/tyler/5514-s-broadway-ave-246.html (last visited Apr. 26, 2026).



BEST BUY, https://stores.bestbuy.com/tx/beaumont/5885-eastex-fwy-238.html (last visited Apr. 26, 2026).

22.    Furthermore, in 2025, Defendant owned significant business property in this District, valued at millions of dollars, including in Collin County, Denton County, and Grayson County.



COLLIN CAD, https://esearch.collincad.org/ (last visited Apr. 26, 2026).



DENTON CENTRAL APPRAISAL DISTRICT, https://www.dentoncad.com/property-search (last visited Apr. 26, 2026).



GRAYSON CAD, https://graysonappraisal.org/property-search/ (last visited Apr. 26, 2026).

23.    Defendant has continued to direct business activities towards this District. Defendant's substantial business in this District and the State of Texas in conjunction with its infringing activities in this District are such that Defendant is subject to this Court's general and specific jurisdiction and the Texas Long Arm statute.

24.    Defendant has previously consented to litigation in this District.  *See, e.g., ToutVirtual, Inc. v. Microsoft Corp.*, No. 2-25-cv-00943-RWS-RSP, Dkt. 9 at ¶¶ 3–19 (E.D. Tex. Oct. 31, 2025) (not contesting venue and admitting to personal jurisdiction in E.D. Tex. for purposes of the case); *Dialect, LLC v. Microsoft Corp.*, 2:24-cv-01067-JRG, Dkt. 13 at ¶¶ 12–16 (E.D. Tex. May 19, 2025) (admitting to personal jurisdiction in E.D. Tex. for purposes of the case).

**FACTUAL ALLEGATIONS**

**Academia Sinica's Patented Technology**

25.    U.S. Patent No. 8,364,468 (the "'468 Patent"), titled "Typing Candidate Generating Method for Enhancing Typing Efficiency," was filed on September 27, 2006.  The '468 Patent

duly issued on January 29, 2013.  The '468 Patent was granted an extended term through October 14, 2029.  A true and correct copy of the '468 Patent is attached hereto as Exhibit A.

26.     U.S. Patent No. 8,594,999 (the "'999 Patent") (together, with the '468 Patent, the "Asserted Patents"), also titled "Typing Candidate Generating Method for Enhancing Typing Efficiency," was filed on December 10, 2012 and claims priority to the '468 Patent.  The '999 Patent duly issued on November 26, 2013.  A true and correct copy of the '999 Patent is attached hereto as Exhibit B.

27.     The inventor of the Asserted Patents, Dr. Wen-Lian Hsu, is a distinguished scientist in the area of information processing technologies with multiple publications and patents to his name.  After receiving his B.S. degree from National Taiwan University and his M.S. and Ph.D. degrees from Cornell University, Dr. Hsu went on to hold several academic and research appointments in the United States and Europe at various prestigious institutions, including as a tenured associate professor at Northwestern University in the Department of Industrial Engineering and Management Sciences and as a visiting professor with Stanford University's Center for the Study of Language and Information.  Dr. Hsu has also received multiple professional honors for his scientific achievements, including recognition as an Institute of Electrical and Electronics Engineers (IEEE) Fellow.

28.     After joining Academia Sinica's Institute of Information Science in 1989, Dr. Hsu focused his research on advancing improved computer input methods.  That research work emphasized text entry methods designed to overcome the hardware constraints common at the time, and received numerous recognitions and awards, including Outstanding Research Awards by the National Science Council (NSC) of Taiwan in 1991-1992, 1994-1995, and 1996-1997.  As reported in the press at the time, Microsoft expressed interest in licensing Dr. Hsu's work.

11

29.     At the time of Dr. Hsu's invention, the typing efficiency of alphabetic words on keyboards was easily hindered, for example, by incorrect spellings, typing errors, unknown spellings, and characters with diacritical marks (or accent marks).  *See, e.g.*, Ex. A ('468 Patent), col. 1 ll. 15–27.  To address this problem, among others, Dr. Hsu invented a subsequence-based approach for text entry as claimed in the Asserted Patents.

30.     Specifically, the Asserted Patents claim technological improvements to text input processing by computer text systems that, unlike conventional systems at the time of the invention, enable the system to identify candidate word(s) for determining the desired word(s) based on the user inputting only a "subsequence" comprising fewer than all the characters from the desired word(s).  Notably, the subsequence may comprise characters that are non-contiguous in the desired word(s) and/or characters that do not form an initial portion of the desired word(s).  *Id.* at claims 1, 17; Ex. B ('999 Patent), claim 1. The patented methods thus improve the computer functionality of processing text input and output, for example, by making it such that the computer need only an input of an abbreviated subsequence, without matching an initial portion of the desired words or prior specification of candidate words, to generate candidate words for determining desired words.

31.     The patented methods identify the candidate word(s) for determining the desired word(s) by maintaining and searching a text storage for candidate word(s) based on the user's input.  For example, the text storage includes text previously inputted by the user, such as from recent articles or paragraphs typed by the user, in order to, *e.g.*, match the typing habits of the user.  *Id.* at col. 3 ll. 32–34, col. 7 ll. 34–50.  In addition, unlike conventional systems, the searching of the text storage for candidate word(s) and for determining of the desired word(s) does not require prior specification of the candidate word(s) as the possible desired word(s).  *Id.* at col. 7 ll. 34–50,

claim 1. The text storage, for example, enables the retrieval of desired text based on any subsequence of that desired text by searching the text storage for text the user typed before or that was stored in a specific user profile. *Id.* at col. 7 ll. 43–50. The text storage can also be trained or tested with a large number of sentences and words, including for acquiring statistical data associated with semantic properties of the sentences. *See, e.g., id.* at col. 3 ll. 7–11, ll. 36–43.

32.    The patented methods may be used to retrieve candidate words in natural language, as well as computer-readable languages or "words," such as email addresses or URLs. *Id.* at col. 6 ll. 46–50, col. 8 ll. 39–45, claim 5. For example, in one embodiment of the claims, a typist that had previously typed the web URL "http://ias1.iis.sinica.edu.tw/hsu/" may desire to re-type the URL. The previously typed URL is stored as a reference, allowing the system to retrieve the previously typed URL as a candidate based on the typist simply typing a subsequence such as "shsu" without requiring the typist to specify in advance that the previously typed URL is a possible candidate for "shsu". *Id.* at col. 6 ll. 46–50.

33.    As further examples, the Asserted Patents describe determining probable candidate words by calculating an "edit distance" that represents an effort of inserting, deleting, or substituting characters of the input word to reach the probable candidate word. Ex. A ('468 Patent) at col. 3 ll. 44–54. The Asserted Patents also describe calculating "similarity distances" between phonetic syllables of words, where a higher similarity distance between phonetic syllables indicates a lower effort of inserting, deleting, or substituting characters, and a lower similarity distance indicates a higher effort. *Id.* at col. 5 ll. 16–30. These similarity distances are then stored into a similarity matrix that is utilized to determine probable candidate words. *Id.* The Asserted Patents thus implement automatic ranking and selection of matches based on stored input, providing a specific technical improvement to the way computers operate over traditional text

13

entry and search methods. These features improve computer functionality by making text candidate generation and text retrieval and input more efficient.

34. The use of the claimed subsequence-based searching and text storage representing words and word sequences accepted from text input by the user for an improved method of generating text candidates and determining the desired text was not well-understood, routine, or conventional at the time of the invention. For example, unlike conventional text candidate generation methods at the time, the claimed inventions need only accept a subsequence of a desired text to search for candidates specific to the desired text, allowing for candidates to be retrieved, *e.g.*, as the user types. The inputted subsequence of the claimed methods comprises less than all the characters of the desired text, may be a non-contiguous subsequence of the characters from the desired text, and is not required to form an initial portion of the desired text, greatly expanding text retrieval functionality. *See, e.g.*, *id.* at claims 1, 17. Additionally, the claimed inventions search and retrieve candidates for the desired text using a text storage maintained with text input from the user without pre-specification of any candidates as a possible result of the searching, improving the way the computer system stores and retrieves data. *See, e.g.*, *id.* at claim 1; Ex. B ('999 Patent), claim 1. The claims additionally specify that searching the text storage for candidate text can further include applying semantic properties and/or frequency of use of the stored text. The claimed invention thus provides significant advantages over conventional systems, including enhanced typing efficiency with improved text candidate generation using simplified inputs and reduced processing time by, for example, enabling the system to search for candidate words as the user types without requiring prior specification of any candidate as a possible search result, particularly for long words with many letters. *See, e.g.*, Ex. A ('468 Patent) at col. 6 ll. 33–50.

14

**Microsoft's Infringement of the Asserted Patents**

35.     Microsoft's Visual Studio is a software tool, commonly referred to as an "integrated development environment" or "IDE," that helps software developers write computer programs. Upon information and belief, Visual Studio is used extensively in the software industry and holds the largest market share of the IDE market in the United States.

36.     Upon information and belief, Microsoft offers Visual Studio in multiple editions and typically releases a new major version every few years.  Visual Studio 2026 is the latest release.  Older versions, including Visual Studio 2022, 2019, and 2017, remain under extended support.

37.     Visual Studio includes an "IntelliSense" (and "IntelliCode") feature that automatically suggests and completes text.  Upon information and belief, Visual Studio uses, for example, an "includes operation" to perform subsequence-based searches and retrieve candidate word sequences.  For example, when a Visual Studio user wants to input the sequence of words "MyParentClass" without typing in the whole sequence again, the user can simply type the letters "pc," and Visual Studio will search for and retrieve potential matching sequences of words (e.g., "MyParentClass" and "MyParentClass2") that were entered previously.  The search is performed on a subsequence of letters (e.g., "pc") to search for potential matching sequences of words, and does not require "pc" to form the initial portion of the desired word sequence (e.g., "MyParentClass" is retrieved even though "pc" does not form an initial portion of "MyParentClass").

**Communications Between Academia Sinica and Microsoft**

38.     In October 2023, Academia Sinica, through its counsel, notified Microsoft of the Asserted Patents and the use of Academia Sinica's patented technology by Microsoft's Visual

15

Studio products.  Despite Academia Sinica's efforts to reach an appropriate resolution, it has been unable to do so and therefore brings this Complaint.

**COUNT ONE: INFRINGEMENT OF U.S. PATENT NO. 8,364,468**

39.    Academia Sinica realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

40.    The '468 Patent is valid and enforceable under United States Patent Laws.

41.    Academia Sinica is the exclusive owner and assignee of all rights, title, and interest in and to the '468 Patent, including the right to collect for past damages.

42.    On information and belief, Microsoft has directly and indirectly infringed the '468 patent by making, using, testing, selling, offering for sale, and/or importing into the United States, without authority, products, methods performed by and/or attributable to equipment, and or services that practice one or more claims of the '468 Patent, including but not limited to the Accused Products.

43.    As a non-limiting example, on information and belief, Microsoft has infringed at least Claim 1 of the '468 Patent.  Microsoft, without authorization from Academia Sinica, has marketed, used, tested, offered for sale, sold, and/or imported into the U.S., including within this District, its Accused Products that infringe at least Claim 1 of the '468 Patent.

44.    As a non-limiting example, Exhibit C is a claim chart detailing infringement of Claim 1 of the '468 Patent in connection with the Accused Products based on publicly available information.

45.    Microsoft has actual knowledge of Academia Sinica's rights in the '468 Patent and details of the Accused Products' infringement of the '468 Patent based on at least the prior communications between the parties, the citation to the Taiwan-counterpart application

16

publication (TW200816007A) of the '468 Patent in Microsoft's U.S. Pat. No. 9,009,591, as well as the filing and service of this Complaint.

46.     On information and belief, by the foregoing acts, including its testing and use of the Accused Products, Microsoft has directly infringed, literally and/or under the doctrine of equivalents, the '468 Patent in violation of 35 U.S.C. § 271.

47.     On information and belief, Microsoft has knowledge of the '468 Patent and indirectly infringes the '468 Patent by active inducement under 35 U.S.C. § 271(b) and/or § 271(f). For example, Microsoft has induced, caused, urged, encouraged, aided and abetted its direct and indirect customers to make, use, test, sell, offer for sale and/or import the Accused Products. Microsoft has done so by acts, including but not limited to selling the Accused Products to its customers; marketing the Accused Products; and providing instructions, training materials, user guides, technical support, and other support to teach and otherwise encourage its customers to use the Accused Products in an infringing manner.  *See, e.g.*, *IntelliSense in Visual Studio*, MICROSOFT BUILD            2026,            https://learn.microsoft.com/en-us/visualstudio/ide/using-intellisense?view=visualstudio); Exhibit C.   Such conduct by Microsoft was intended to and actually resulted in direct infringement, including the making, testing, using, selling, offering for sale, and/or importation of the Accused Products in the United States.

48.     On information and belief, Microsoft has knowledge of the '468 Patent and indirectly infringes by contributing to the infringement of, and continuing to contribute to the infringement of, one or more claims of the '468 Patent under 35 U.S.C. § 271(c) and/or 271(f) by selling, offering for sale, and/or importing into the United States, the Accused Products.  The subsequence-based code completion functionality of the Accused Products is a material

component of Academia Sinica's patented inventions, especially made and adapted for practicing the claimed text entry methods without any substantial non-infringing uses.

49.     On information and belief, Microsoft's infringement has, and continues to be, knowing, intentional and willful.

50.     Microsoft's acts of infringement of the '468 Patent have caused and will continue to cause Academia Sinica damages, for which Academia Sinica is entitled to compensation pursuant to 35 U.S.C. § 284.

51.     The circumstances surrounding Defendant's infringement are exceptional and, therefore, Plaintiff is entitled to enhanced damages and an award of attorney's fees pursuant to 35 U.S.C. § 285.

### COUNT TWO: INFRINGEMENT OF U.S. PATENT NO. 8,594,999

52.     Academia Sinica realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

53.     The '999 Patent is valid and enforceable under United States Patent Laws.

54.     Academia Sinica is the exclusive owner and assignee of all rights, title, and interest in and to the '999 Patent, including the right to collect for past damages.

55.     On information and belief, Microsoft has directly and indirectly infringed the '999 patent by making, using, testing, selling, offering for sale, and/or importing into the United States, without authority, products, methods performed by and/or attributable to equipment, and or services that practice one or more claims of the '999 Patent, including but not limited to the Accused Products.

56.     As a non-limiting example, on information and belief, Microsoft has infringed at least Claim 1 of the '999 Patent.  Microsoft, without authorization from Academia Sinica, has

marketed, used, tested, offered for sale, sold, and/or imported into the U.S., including within this District, the Accused Products that infringe at least Claim 1 of the '999 Patent.

57.    As a non-limiting example, Exhibit D is a claim chart detailing infringement of Claim 1 of the '999 Patent in connection with the Accused Products.

58.    Microsoft has actual knowledge of Academia Sinica's rights in the '999 Patent and details of the Accused Products' infringement of the '999 Patent based on at least the prior communications between the parties, the citation to the Taiwan-counterpart application publication (TW200816007A) of the '999 Patent in Microsoft's U.S. Pat. No. 9,009,591, as well as the filing and service of this Complaint.

59.    On information and belief, by the foregoing acts, including its testing and use of the Accused Products, Microsoft has directly infringed, literally and/or under the doctrine of equivalents, the '999 Patent in violation of 35 U.S.C. § 271.

60.    On information and belief, Microsoft has knowledge of the '999 Patent and indirectly infringes the '999 Patent by active inducement under 35 U.S.C. § 271(b) and/or § 271(f). For example, Microsoft has induced, caused, urged, encouraged, aided and abetted its direct and indirect customers to make, use, test, sell, offer for sale and/or import the Accused Products. Microsoft has done so by acts, including but not limited to selling the Accused Products to its customers; marketing the Accused Products; and providing instructions, training materials, user guides, technical support, and other support to teach and otherwise encourage its customers to use the Accused Products in an infringing manner. *See, e.g.*, *IntelliSense in Visual Studio*, MICROSOFT BUILD 2026, https://learn.microsoft.com/en-us/visualstudio/ide/using-intellisense?view=visualstudio; Exhibit D.   Such conduct by Microsoft was intended to and

19

actually resulted in direct infringement, including the making, testing, using, selling, offering for sale, and/or importation of the Accused Products in the United States.

61. On information and belief, Microsoft has knowledge of the '999 Patent and indirectly infringes by contributing to the infringement of, and continuing to contribute to the infringement of, one or more claims of the '999 Patent under 35 U.S.C. § 271(c) and/or 271(f) by selling, offering for sale, and/or importing into the United States, the Accused Products. The subsequence-based code completion functionality of the Accused Products is a material component of Academia Sinica's patented inventions, especially made and adapted for practicing the claimed text entry methods without any substantial non-infringing uses.

62. On information and belief, Microsoft's infringement has, and continues to be, knowing, intentional and willful.

63. Microsoft's acts of infringement of the '999 Patent have caused and will continue to cause Academia Sinica damages, for which Academia Sinica is entitled to compensation pursuant to 35 U.S.C. § 284.

64. The circumstances surrounding Defendant's infringement are exceptional and, therefore, Plaintiff is entitled to enhanced damages and an award of attorney's fees pursuant to 35 U.S.C. § 285.

## **DEMAND FOR JURY TRIAL**

65. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff respectfully demands a jury trial of all issues triable to a jury in this action.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendant and relief as follows:

A. A judgment adjudicating and declaring that Defendant has directly infringed the Asserted Patents, literally and/or under the doctrine of equivalents;

B. A judgment adjudicating that Defendant has indirectly infringed the Asserted Patents by inducing and/or contributing to its customers' and/or end users' infringement;

C. A judgment awarding Plaintiff all appropriate damages for the infringement of the Asserted Patents that has occurred, and any continuing or future infringement of the Asserted Patents, up until the date such judgment is entered;

D. A judgment that Defendant's infringement has been willful and an award of treble damages under 35 U.S.C. § 284;

E. A judgment that this case is exceptional and an award of Plaintiffs' reasonable attorneys' fees under 35 U.S.C. § 285;

F. An order for an accounting for any infringing sales not presented at trial and an award by the Court of additional damages for any such infringing sales;

G. An order awarding pre-judgment and post-judgment interest on each and every monetary award; and

H. An award to Plaintiff of any such other and further relief as this Court deems just and proper, or that Plaintiff may be entitled to as a matter of law or equity, including an award of Plaintiffs' costs and expenses.

DATED: May 14, 2026

21

*/s/ Andrea L. Fair*

Nicholas Groombridge
Jenny C. Wu
Jessica Zhao
GROOMBRIDGE, WU, BAUGHMAN &
    STONE LLP
565 Fifth Avenue, Suite 2900
New York, NY 10017
(332) 269-0030

Hayley R. LeBlanc
GROOMBRIDGE, WU, BAUGHMAN &
    STONE LLP
801 17th Street NW, Suite 1050
Washington, DC 20006
(202) 505-5830

Maxwell Fox
Han Xu
GROOMBRIDGE, WU, BAUGHMAN &
    STONE LLP
2F Marunouchi Nijubashi Bldg,
3-2-2 Marunouchi
Chiyoda-ku, Tokyo 100-0005
+81 03-6632-7424

Of Counsel:
Andrea L. Fair
State Bar No. 24078488
MILLER FAIR HENRY PLLC
1507 Bill Owens Parkway
Longview, Texas 75604
(903) 757-6400
andrea@millerfairhenry.com

*Attorneys for Plaintiff Academia Sinica*